# EXHIBIT 2

# AMENDED COMPLAINT

HONORABLE KAEREN MATSON DONOHUE

FILED
2026 MAY 29 03:42 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-15407-4 SEA

SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| PEDRO GOMEZ,<br><br>Plaintiff,<br>v.<br><br>GOOGLE LLC, a Foreign Limited Liability Company<br><br>Defendant. | NO. 26-2-15407-4 SEA<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br><br>**JURY TRIAL REQUESTED** |

COMES NOW Plaintiff PEDRO GOMEZ, by and through his attorney of record, CHRISTOPHER J. STOCKWELL of STOCKWELL LAW FIRM PLLC, and hereby alleges as follows:

## I. PARTIES

1. Plaintiff PEDRO GOMEZ is now and, at all times material hereto, was a resident of King County, Washington.

2. Defendant GOOGLE LLC., a Delaware limited liability company, at all times material hereto has been a for profit company, conducting business in King County, Washington.

//

//



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

## II. JURISDICTION & VENUE

3. The acts alleged herein primarily occurred in King County, Washington. The amount in controversy in greater than $300.00.

4. As a court of general jurisdiction, the superior court has personal and subject matter jurisdiction over the claims alleged per RCW§§ 2.08.010 & 4.12.025(1) & (3). This Court has full and proper jurisdiction over all of the parties hereto and over the subject matter herein.

5. This case meets the case assignment criteria described in King County LCR 82(e), and is should be assigned to the Seattle Area.

6. Plaintiff has arranged for timely service of process on Defendant pursuant to RCW § 4.28.080(8) and/or CR 5(b)(1) & (2).

## III. NATURE OF EMPLOYER

7. Defendant was, at all relevant times, engaged in trade and commerce in King County, Washington, and fits the definition of employer per RCW § 51.08.070.

## IV. FACTS

8. Mr. Gomez had been working at Google since February 11, 2022, as a Senior Technical Program Manager on the Radar project.

9. Michelle Parker, Director, recruited Mr. Gomez from Amazon due to his specialized expertise and experience.

10. Mr. Gomez received three annual ratings during his employment at Google, on February 2023, February 2024, and February 25, all of which rated him, "Significantly Met Expectations."

11. Mr. Gomez regularly presented to VP level leaders about the Radar program.



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

12. From March 2023 through January 2024, Mr. Gomez reported to Chris Smith. During this time, Mr. Gomez's coworker, Grace Cremieux, filed a complaint against Mr. Smith for discrimination.

13. In November 2023, Mr. Gomez spoke with a Google investigator about his experience working for Mr. Smith and noted that he felt he was discriminated against based on his race and ethnicity as a Latino.

14. Again, in January 2024, Mr. Gomez spoke with a Google investigator about his experience working for Mr. Smith and noted that he felt he was discriminated against based on his race and ethnicity as a Latino.

15. In January 2024, Mr. Smith was terminated, allegedly due to the discrimination claims against him.

16. By this time, most of Mr. Gomez's colleagues working in the organization left.

17. Mr. Gomez stayed to work on the Radar project.

18. A number of Mr. Gomez's colleagues questioned his decision to stay, due to the discriminatory history of the organization.

19. In July 2024, Mr. Gomez's team began reporting to James Stavropoulos, Global Lead, Technology Optimization Platform Solutions. Mr. Stavropoulos was a former peer and associate of Mr. Smith.

20. Almost immediately upon assuming management of Mr. Gomez, Mr. Stavropoulos began a pattern of targeted retaliation against Mr. Gomez.

21. In Mr. Gomez's first meeting with his Mr. Stavropoulos, Mr. Stavropoulos immediately attempted to devalue Mr. Gomez's contributions by stating that the Radar project was "not essential" and merely "nice to have."



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

22. Mr. Gomez was shocked by this characterization. Not only had Mr. Gomez been consistently praised for his work, but the Radar Program had recently been awarded the Google Cloud Tech Award in the Fall of 2023. This objective company recognition directly contradicted Mr. Stavropoulos's baseless assertion and signaled an immediate, unwarranted shift in how Mr. Gomez's performance and value were being judged.

23. In the fall of 2024, Mr. Stavropoulos brought in Bartlomiej Czechowski, Senior Technical Program Manager, at the same level as Mr. Gomez, to lead the project that Mr. Gomez had been leading, essentially demoting Mr. Gomez.

24. At this time, Mr. Gomez began reporting to Mr. Czechowski.

25. Around this time, Mr. Stavropoulos scrutinized Mr. Gomez for his calendar hygiene, asking him why he had meetings with people outside of Google.

26. Concerned about his future at Google, Mr. Gomez began interviewing for internal roles on other teams.

27. During the first week of October 2024, Mr. Gomez interviewed for the position of Senior Technical Program Manager on the Server Operation Organization.

28. The hiring manager, Karin Lopez told Mr. Gomez that he was the "top finalist."

29. Mr. Gomez also interviewed with the skip level manager, Clinton Johnson, who mentioned he had worked with Mr. Stavropoulos in the Server Operation Organization.

30. While Mr. Gomez was the final candidate for the role, he was almost immediately rejected after interviewing with Mr. Johnson.

31. Despite his specialized expertise and a history of Significantly Met Expectations ratings, Mr. Gomez's sudden inability to secure an internal role—particularly within organizations where the hiring managers had prior relationships with Mr. Stavropoulos—created a strong



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

inference that Mr. Stavropoulos was actively interfering with Mr. Gomez's transfer attempts, providing negative references in retaliation.

32. Around the same time, Mr. Gomez interviewed for the role of Senior Technical Program Manager with Julissa Ramirez, also in the Server Operation Organization.

33. While Ms. Ramirez seemed genuinely excited about Mr. Gomez's application, he again did not receive a job offer.

34. In November 2024, Mr. Czechowski cut funding for the Radar project.

35. Mr. Czechowski then put Pooja Shevade, Technical Program Manager and an L5, in charge of the program.

36. As part of this change, Mr. Czechowski moved Mr. Gomez into a supporting role, demoting him once again. Mr. Gomez would now be working on the intake funnel and scheduling business reviews.

37. In the fall of 2024, Mr. Stavropoulos asked Mr. Gomez about appointments on his calendar. Mr. Gomez told Mr. Stavropoulos that he was meeting with a therapist.

38. In December 2024, Mr. Gomez began working with Mr. Stavropoulos in his new capacity.

39. During this time, Mr. Gomez and Mr. Stavropoulos had numerous discussions where Mr. Gomez disagreed and felt stuck in the middle of discussions and decisions happening among senior level leaders.

40. In early 2025, Mr. Gomez's therapist, Kaya Wynn, MEd, MSW, LICSW therapist, diagnosed Mr. Gomez with anxiety and depression.

41. Around this time, Mr. Gomez increased his efforts to find an internal role on another team.



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

42. Again, around this time, Mr. Stavropoulos, scrutinized Mr. Gomez' calendar hygiene.

43. Also, around this time, Dustin Randall, a white colleague, was promoted to L6 by Mr. Stavropoulos.

44. In the spring, Mr. Gomez expanded his job search outside of the Seattle area.

45. In April 2025, Mr. Randall went out on FMLA leave.

46. On May 23, 2025, Mr. Gomez attended a meeting set up by Mr. Stavropoulos. Mr. Stavropoulos started the meeting stating that his intention was to be "empathetic." During this meeting, Mr. Stavropoulos presented Mr. Gomez with two distinct paths for his continued employment at Google: Mr. Gomez could either remain with his current team and focus on "improving" performance, or he could seek an internal transfer to another team.

47. Mr. Stavropoulos disclosed to Mr. Gomez that he had previously been placed on a Performance Plan himself and had successfully "gotten out of it." Mr. Stavropoulos shared that when he was in that situation, he chose to stay with his team to improve, but he reiterated that the choice to transfer was a valid and available option for Mr. Gomez, although Mr. Gomez doubted that as his continued efforts to transfer teams appeared to be continually blocked.

48. On May 30, 2025, Mr. Gomez submitted a leave claim to Sedgwick (DS Incident #4A2505Y6GCB0001) for mental health reasons.

49. Also on May 30, 2025, Mr. Gomez emailed Mr. Stavropoulos, writing, "I am taking this leave to focus on my health and well-being. Given the current team dynamics and recent conversations, I do not feel that I am in a psychologically safe environment. This time is crucial for me to prioritize my mental health."



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

50. In addition, Mr. Gomez explained again that some of the calendar "hygiene" issues referenced were due to previously scheduled appointments with his therapist, which he attended to address mental health concerns that were being exacerbated by the toxic work environment.

51. Mr. Gomez further explained the "calendar hygiene" issues for which he was scrutinized, noting that he has blocked time for workshops, which was part of his job, and adjusted his calendar to take global calls before and after typical work hours.

52. On the same date, Mr. Gomez sent a similar email to his skip-level manager, Shen Jackson, Director, noting his concern about his mental health and lack of psychological safety. In addition, he noted, "My efforts to maintain my health, including scheduled appointments with my therapist and career coach, were scrutinized and misconstrued as unavailable, calendar hygiene resulting in underperformance."

53. On September 11, 2025, Mr. Gomez received approval for the following from Sedgwick (Claim #4A2505Y6GCB-0001): Short Term Disability Leave, from May 30, 2025, through September 7, 2025, and FMLA/PFML from May 30, 2025, through August 21, 2025.

54. On October 10, 2025, Mr. Gomez received approval for ADA Leave from Sedgwick, from September 8, 2025, through November 3, 2025 (Claim # C508250688800054TC).

55. From November 4 through November 30, 2025, Mr. Gomez was approved for Continuous ADA Leave (Claim #C508250688800054TC).

56. On December 5, 2025, Mr. Gomez submitted an application for Google's Carer's Leave to care for his grandmother, who required assistance and care during a comprehensive lung cancer work-up and the evaluation of a pre-cancerous lung lesion.

57. On December 9, 2025, Mr. Gomez was approved for Carer's Leave by Sedgwick, from December 1, 2025, through February 1, 2026 (Claim #C554593405-0001-01).



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

58. Upon the end of Carer's Leave, Mr. Gomez was still trying to create a stable plan for his grandmother, and so he applied for two weeks of PTO so that he could properly transition his grandmother's care.

59. The PTO was approved by Mr. Stavropoulos.

60. Throughout Mr. Gomez's leave, he continued to apply for roles at Google, totaling more than 50 applications.

61. Mr. Gomez was invited to interview for more than 20 roles but did not receive any offers.

62. Meanwhile, in January 2026, Mr. Randall, Mr. Gomez's white colleague who had also been out on leave, was able to secure another internal role at Google.

63. On February 6, 2026, while Mr. Gomez was still on PTO, Mr. Stavropoulos scheduled a meeting with him, which Mr. Gomez accepted. During this meeting, Mr. Stavropoulos terminated Mr. Gomez's role at Google, citing "performance," and telling Mr. Gomez that he "did not meet expectations."

## V. FIRST CAUSE OF ACTION WRONGFUL TERMINATION IN VIOLATION OF A PUBLIC POLICY

64. Plaintiff re-alleges every allegation set forth in the paragraphs above.

65. At all times relevant hereto, Plaintiff performed his job duties successfully.

66. To establish a claim of wrongful termination, Mr. Gomez need only show (1) the existence of a clear public policy (the clarity element); (2) that discouraging the conduct in which he engaged would jeopardize the public policy (the jeopardy element); (3) that his public-policy-linked conduct was a substantial factor in (i.e. the cause of) … decision to discharge him (the causation element); and (4) that employers generally do not have an 'overriding justification' for wanting to use the activity as a factor affecting the decision to discharge (the



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

absence of justification element). *Little v. Windermere Relocation, Inc*., 301 F.3d 958, 971 (9th Cir. 2002). The action may be based on "either express or constructive" discharge. *Snyder v. Med. Serv. Corp. of E. Wash.,* 145 Wash.2d 233, 238, 35 P.3d 1158 (2001) (citing *Riccobono v. Pierce County,* 92 Wash.App. 254, 263, 966 P.2d 327 (1998)); *see also Korslund v. DynCorp Tri–Cities Servs., Inc.,* 156 Wash.2d 168, 177 n. 1, 125 P.3d 119 (2005).

67. Taking adverse employment actions against employees because of their race and disability is a clear recognized matter of public policy in the state of Washington.

68. It's not debatable that discriminating against Mr. Gomez due to his race and disability would jeopardize the public policy.

69. Mr. Gomez's race and disability was a substantial factor in (i.e. the cause of) the decision to terminate him, as can be proven through numerous actions, including: the functional demotion of Mr. Gomez's role once he was placed under a colleague of Mr. Smith's, who he had accused of discrimination; the continual scrutiny of Mr. Gomez's therapy appointments; the consistent blocking of Mr. Gomez from transferring internally within Google; and the decision to terminate him as he was preparing to return to his role from leave.

70. Finally, Google lacks any overriding justification that would make Mr. Gomez's use of this public policy motivation to fire him.

71. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## VI. SECOND CAUSE OF ACTION RACE AND DISABILITY DISCRIMINATION UNDER RCW 49.60 *et seq*.

72. Plaintiff re-alleges every allegation set forth in the paragraphs above.

73. At all times relevant hereto, Plaintiff performed his job duties successfully.



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

74. Mr. Gomez can support a claim for race and disability discrimination under WLAD by demonstrating that (1) That he is a member of a protected class, (2) he was qualified for the employment position, (3) he suffered an adverse employment action, and (4) similarly situated employees not in his protected class received more favorable treatment. *Matson v. United Parcel Serv*., Inc., 872 F. Supp. 2d 1131, 1145 (W.D. Wash. 2012).

75. Mr. Gomez falls into the protected classes of being Latino and disabled for WLAD purposes, as he suffers from anxiety and depression.

76. While Mr. Stavropoulos was unaware of his specific diagnosis, he had criticized Mr. Gomez's calendar hygiene which required Mr. Gomez to disclose that he was seeing a therapist. Therefore, we can assume that Mr. Stavropoulos perceived Mr. Gomez to have a disability.

77. Mr. Gomez was clearly qualified for his position, having worked three years in his role, having been awarded the Google Cloud Tech Impact Award for his work in 2023, having presented to executive leaders, and having been recruited from Amazon specifically for his expertise and experience.

78. There were multiple adverse employment actions here.

79. Mr. Gomez was blocked form internal transfer by his supervisor while his white colleague was not.

80. In addition, Mr. Gomez was terminated as he was planning to return from leave.

81. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## VII. THIRD CAUSE OF ACTION RETALIATION UNDER RCW 49.60 *et seq.*

82. Plaintiff re-alleges every allegation set forth in the paragraphs above.



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

83. At all times relevant hereto, Plaintiff performed his job duties successfully.

84. Mr. Gomez can support his claim of retaliation under WLAD by demonstrating that (1) he engaged in a statutorily-protected activity, (2) Google took adverse employment action against him, and (3) there is a causal link between the activity and adverse action. *Milligan v. Thompson*, 110 Wn. App. 628, 638, 42 P.3d 418, 424 (2002).

85. Noting discrimination complaints against his previous supervisor and requesting medical leave is statutorily-protected activity. In addition to the adverse employment actions *supra* and the proximity of time surrounding the events, the subsequent adverse actions support the retaliation claim.

86. The behavior of Google's agents was rooted in discriminatory animus.

87. The retaliatory actions were based on, at a minimum, Google's agents' underlying discriminatory animus toward Mr. Gomez's race and disability.

88. Google is vicariously liable for the actions of its agents acting in their role for the company. Those facts make Mr. Gomez's termination illegal.

89. As for Google, or its legally-liable agents' actions and motivations, such issues are usually questions of fact for the jury to decide, especially where there is a close temporal proximity between the protected activity and the adverse action, as is the case here. *See Campbell v. State,* 129 Wn. App. 10, 23 (2005), *review denied,* 157 Wn.2d 1002 (2006) ("Proximity in time between the adverse action and the protected activity, along with evidence of satisfactory work performance suggests an improper motive."); *Kahn v. Salerno,* 90 Wn. App. 110, 130-131 (1998). Where, as here, the employer knows of the protected activity and the adverse action follows during or shortly thereafter, "it is a reasonable



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

inference that these actions were in retaliation" for the activity. *Cornwell v. Google Corp.*, 192 Wn.2d 403, 416 (2018).

90. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## VIII. FOURTH CAUSE OF ACTION PROTECTED LEAVE DISCRIMINATIONAND RETALIATION UNDER RCW 50A *et seq.*

84. Plaintiff re-alleges every allegation set forth in the paragraphs above.

85. At all times relevant hereto, Plaintiff performed his job duties successfully.

86. To establish a claim for violation of Washington's paid family and medical leave statute ("PFML"), RCW 50A.40.010 et seq.4 The statute makes it unlawful for an employer to "[i]nterfere with, restrain, or deny the exercise of, or the attempt to exercise, any valid right provided under this title; or [to] "[d]ischarge or in any other manner discriminate against any employee for opposing any practice made unlawful by this title." RCW 50A.40.010(1). RCW 50A.40.010(2) also prohibits employers from retaliating against employees who file complaints or institute proceedings under or related to the leave statute or who provide information or testify (or who are "about to" provide information or testify) "in any inquiry or proceeding relating to any right provided under this title."

87. Similarly, Mr. Gomez can support a claim of discrimination/retaliation under FMLA by demonstrating that (1) he was absent from work for reasons covered by the FMLA, (2) he suffered an adverse employment decision, and (3) that the covered leave was a negative factor in Google's employment decision. See Espindola v. Apple King, 6 Wn. App. 2d 244, 257 (2018). As before, it appears the animus toward Mr. Gomez's leave based on symptoms of depression and anxiety carries over to his protected leave. His leave was covered by FMLA.



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

There was an adverse employment action(s). There is close in time proximity between the protected activity and the adverse employment action.

88. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## IX. FIFTH CAUSE OF ACTION VIOLATIONS OF RCW 49.12 *et seq.*

89. Plaintiff re-alleges every allegation set forth in the paragraphs above.

90. At all times relevant hereto, Plaintiff performed his job duties successfully.

91. Mr. Gomez can support his claim of violations of RCW 49.12 *et seq.* because on March 19, 2026, through his designee attorney, he requested his employee file. Defendant failed to respond in to Plaintiff's statutory request in any way.

92. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## X. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

85. Order Defendant to make Plaintiff whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the above paragraphs, including without limitation emotional pain, suffering, and loss of enjoyment of life, in an amount to be determined at trial.

86. Order Defendant to pay Plaintiff for any and all tax consequences associated with the damages and cost award, including but not limited to attorney's fees.

87. Award Plaintiff the costs of this action, including attorney's fees.

88. Grant any additional or further relief as provided by law, which this Court finds appropriate, equitable, or just.



**Stockwell Law Firm PLLC**
3300 E Union Street #108
Seattle, WA 98112
(206) 929-3111

DATED this 29th day of May, 2026.

**STOCKWELL LAW FIRM PLLC**

By______________________________

Christopher J. Stockwell, WSBA # 50001
3300 E Union Street #108
Seattle, WA 98112
Phone (206) 929-3111
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May 2026, I caused the foregoing document to be served to all parties listed below *via* the King E-Filing system:

Davis Wright Tremaine LLP

Melissa Mordy, WSBA No. 41879
929 108th Ave NE, Suite 1500
Bellevue, WA 98004
P: (425) 646-6100
F: (425) 646-6199
Email: missymordy@dwt.com

Katie Loberstein, WSBA No. 51091
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
P: (206) 622-3150
F: (206) 757-7700
Email: katieloberstein@dwt.com

Attorneys for Defendant

DATED this 29th day of May 2026.

By: /s/ *Christopher J. Stockwell*